IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONNA MITCHEL, et al.,            :

                                  :

     v.                           :    Civil Action No. DKC 10-2349

                                  :

CROSBY CORPORATION, et al.        :

                                  :

**MEMORANDUM OPINION**

Presently pending and ready for review this Fair Labor Standards Act ("FLSA") case is the motion for conditional certification of a collective action and facilitation of notice filed by Plaintiffs Donna Mitchel, Kenya Farris, Sylvia Wheeler, and Christina Wilson.[1]  (ECF No. 57).  The issues have been fully briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Plaintiffs' motion for conditional certification of a collective

---

[1] Defendants contend that Donna Mitchel should be barred by the doctrine of judicial estoppel from asserting her claims and from representing the purported class because she failed to disclose her involvement in this lawsuit in a subsequent filing for bankruptcy.  The court will not address this argument now, because it is not relevant to the motion pending, and the parties have not briefed the issue.  *See Calafiore v. Werner Enter. Inc.*, 418 F.Supp.2d 795, 797 (D.Md. 2006) (noting that "the Fourth Circuit apparently has not addressed the application of judicial estoppel to a case in which a debtor fails to schedule a potential claim in a bankruptcy filing but later asserts that claim," and requires a close examination of "the legal test for intent in this context").

action and facilitation of notice will be granted in part and denied in part.

**I.    Background**

    **A.    Factual Background**

For present purposes, the facts are taken as follows:

Defendant Crosby Corporation ("Crosby") provides temporary staffing services to corporate clients, including The Federal Home Loan Mortgage Corporation ("Freddie Mac"). Plaintiffs are loan underwriters who were hired by Crosby to work for Freddie Mac in its McLean, Virginia facility beginning in May 2009. Plaintiffs and other loan underwriters reviewed previously underwritten loan files, and were supervised by both Freddie Mac and Crosby employees. Crosby also provided underwriters for Freddie Mac in its Chicago and Atlanta facilities. These temporary employees were paid an hourly wage for their work.

Plaintiffs allege that both Crosby and Freddie Mac "have implemented a nationwide policy wherein underwriters are not paid minimum wage or overtime pay." (ECF No. 57, at 4). As part of this policy, Defendants required underwriters to meet certain production quotas. Plaintiffs assert that both Freddie Mac and Crosby supervisors told underwriters that they must meet their required weekly loan review quotas, or risk losing their jobs. Defendants were aware that underwriters would need to work more than forty hours per week to meet these quotas.

Crosby and Freddie Mac supervisors instructed underwriters not to submit time sheets reflecting more than forty hours worked in a week, because they would not pay employees for overtime hours. This policy resulted in Plaintiffs and other underwriters working uncompensated overtime hours to meet their quotas. Plaintiffs aver that they can demonstrate that they routinely worked more than forty hours a week and were not paid for those excess hours.   Finally, Plaintiffs declare that they have personal knowledge of other underwriters who have been victims of the same policy.

### B.   Procedural Background

Plaintiffs filed a complaint against Crosby on August 25, 2010, on behalf of themselves and similarly situated others.   In the complaint, they sought to bring an FLSA overtime claim as a collective action pursuant to 29 U.S.C. § 216(b), as well as state overtime and unpaid wage claims as class actions pursuant to Federal Rule of Civil Procedure 23.   (ECF No. 1).   Plaintiffs amended the complaint on October 19, 2011 to include Freddie Mac as a Defendant.   (ECF No. 39).   Defendants then answered the complaint, and the parties began limited discovery.   (ECF Nos. 44, 47).   On February 15, 2012, Plaintiffs moved for conditional certification of a collective action for all underwriters employed by either Crosby or Freddie Mac nationwide, since June 28, 2007, who have not been properly compensated for their

overtime work or have not been paid a minimum wage for all hours worked. (ECF No. 57). They also requested facilitation of notice to potential opt-in plaintiffs.[2] On February 27, 2012, the parties entered a joint motion for proposed limited discovery. (ECF No. 59). The court held a telephone conference on April 24, 2012, at which time it limited the scope of the potential class to underwriters employed by Crosby who were assigned to work for Freddie Mac. The parties then took depositions of Plaintiffs Donna Mitchel, Kenya Farris, Sylvia Wheeler, and Christina Wilson; Defendant Howard Crosby, and Freddie Mac supervisor Ronald Fiegles. They also obtained declarations of a number of current underwriters working for Crosby and Freddie Mac. (*See* ECF No. 75-1 through 75-13). Plaintiffs filed a motion for extension of time to respond to Defendants' oppositions to their motion for conditional certification of the class without first meeting and conferring with opposing counsel. (ECF No. 77). This motion was unopposed by Defendant Freddie Mac. (ECF No. 78).

## II. Motion for Conditional Certification and for Court-Facilitated Notice

"Under the FLSA, plaintiffs may maintain a collective action against their employer for violations under the act

---

[2] On September 23, 2010, one additional Crosby underwriter working at Freddie Mac – Vonnese Masembwa - filed a consent form seeking to opt-in as a plaintiff. (ECF No. 8).

pursuant to 29 U.S.C. § 216(b)." *Quinteros v. Sparkle Cleaning, Inc.*, 532 F.Supp.2d 762, 771 (D.Md. 2008).   Section 216(b) provides, in relevant part, as follows:

> An action . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

"This provision establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Quinteros*, 532 F.Supp.2d at 771 (citing *Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D.Md. 2000)).

When deciding whether to certify a collective action pursuant to the FLSA, courts generally follow a two-stage process. *Syrja v. Westat, Inc.*, 756 F.Supp.2d 682, 686 (D.Md. 2010).   In the first stage, commonly referred to as the notice stage, the court makes a "threshold determination of 'whether the plaintiffs have demonstrated that potential class members are 'similarly situated,' such that court-facilitated notice to the putative class members would be appropriate.'" *Id.* (quoting *Camper*, 200 F.R.D. at 519).   In the second stage, following the close of discovery, the court conducts a "more stringent

5

inquiry" to determine whether the plaintiffs are in fact "similarly situated," as required by § 216(b). *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D.Md. 2007). At this later stage, referred to as the decertification stage, the court makes a final decision about the propriety of proceeding as a collective action. *Syrja*, 756 F.Supp.2d at 686 (quoting *Rawls*, 244 F.R.D. at 300). Plaintiffs here have moved for conditional certification of a collective action, and they have requested court-facilitated notice to potential opt-in plaintiffs.

**A.   Conditional Certification Is Appropriate Because Plaintiffs Have Made a "Modest Factual Showing" that Underwriters Hired by Crosby to Work at Freddie Mac's McLean, Virginia Facility Are "Similarly Situated"**

"Determinations of the appropriateness of conditional collective action certification . . . are left to the court's discretion." *Id.; see also Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989). The threshold issue in determining whether to exercise such discretion is whether Plaintiffs have demonstrated that potential opt-in plaintiffs are "similarly situated." *Camper*, 200 F.R.D. at 519 (quoting 29 U.S.C. § 216(b)). "'Similarly situated' [does] not mean 'identical.'" *Bouthner v. Cleveland Constr., Inc.*, No. RDB-11-0244, 2012 WL 738578, at *4 (D.Md. Mar. 5, 2012) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001)). Rather, a

group of potential FLSA plaintiffs is "similarly situated" if its members can demonstrate that they were victims of a common policy, scheme, or plan that violated the law. *Mancia v. Mayflower Textile Servs. Co.*, No. CCB-08-0273, 2008 WL 4735344, at *3 (D.Md. Oct. 14, 2008); *Quinteros*, 532 F.Supp.2d at 772. To satisfy this standard, plaintiffs generally need only make a "relatively modest factual showing" that such a common policy, scheme, or plan exists. *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D.Md. 2006).

To meet this burden and demonstrate that potential class members are "similarly situated," Plaintiffs must set forth more than "vague allegations" with "meager factual support" regarding a common policy to violate the FLSA. *D'Anna, v. M/A COM, Inc.*, 903 F.Supp. 889, 894 (D.Md. 1995); *Bouthner*, 2012 WL 738578, at *4. Their evidence need not, however, enable the court to determine conclusively whether a class of "similarly situated" plaintiffs exists, *Bouthner*, 2012 WL 738578, at *4, and it need not include evidence that the company has a formal policy of refusing to pay overtime, *Quinteros*, 756 F.Supp.2d at 772. Plaintiffs may rely on "[a]ffidavits or other means," such as declarations and deposition testimony, to make the required showing. *Williams v. Long*, 585 F.Supp.2d 679, 684-85 (D.Md. 2008); *Essame v. SSC Laurel Operating Co.*, --- F.Supp.2d ---, 2012 WL 762895, at *3 (D.Md. Mar. 12, 2012).

Here, through Plaintiffs' declarations, they have made a "modest factual showing" that they are "similarly situated" to other Crosby-employed underwriters working at Freddie Mac's McLean facility who have worked more than forty hours per week since May 1, 2009,[3] but have not received appropriate proper compensation, including overtime pay. First, Donna Mitchel, Kenya Farris, Sylvia Wheeler, and Christina Wilson have all submitted declarations attesting that they and other Crosby underwriters working for Freddie Mac were required to meet certain production quotas. (ECF Nos. 57-1 through 57-4). Second, Plaintiffs assert that supervisors told all underwriters that they must meet their required weekly loan review quotas, or risk losing their jobs. (*Id.*). Third, Plaintiffs all attest that the Defendants were aware that underwriters could not meet their quotas in a forty-hour workweek. (*Id.*). Fourth, all four Plaintiffs who submitted declarations contend that Crosby and Freddie Mac supervisors affirmatively instructed underwriters not to submit time sheets reflecting more than forty hours

---

[3] Plaintiffs' proposed notice requests certification for a class of Crosby underwriters who began work after both June 28, 2007 and June 27, 2008. (ECF No. 57-8, at 1-2). Neither of these dates relate to the facts of this case. The earliest date that the Plaintiffs suggest prospective class members began working for Crosby at Freddie Mac's McLean facility is May 1, 2009. (ECF No. 80, at 2). Therefore, the proposed class may only include those Crosby-employed underwriters working at Freddie Mac's McLean facility after May 1, 2009.

worked in a week, because they would not pay the underwriters for that additional time. (*Id.*). Finally, Plaintiffs all aver that they were not fully compensated by the Defendants for all hours worked, and that they have personal knowledge of other underwriters who also were not paid overtime. (*Id.*). Taken together, these facts attested to in Plaintiffs' declarations establish the "modest factual showing" necessary for conditional certification of a class of underwriters who worked for Crosby in Freddie Mac's McLean facilities since May 1, 2009.

Plaintiffs contend that the class should include all Crosby-employed underwriters working at Freddie Mac facilities nationwide. Because Plaintiffs have offered no evidence of Defendants' failure to pay overtime at any other Freddie Mac facilities, they have failed to meet their burden with respect to Defendants' policies outside of the McLean, Virginia facility. *See Faust v. Comcast Cable Comms. Mgmt., LLC.*, No. WMN-10-2336, 2011 WL 5244421, at *4 (D.Md. Nov. 1, 2011) (limiting conditional certification of FLSA class to one of eight Maryland call centers because even though employees at all call centers perform the same tasks and are subject to the same company policies, "Plaintiffs have failed to provide any concrete evidence" demonstrating that employees at other facilities had been victims of the same illegal policies); *Camper*, 200 F.R.D. at 520-21 (holding that although plaintiffs

preliminarily established the existence of a company-wide policy concerning use of time clocks, notice to the potential class was warranted with respect to only the one facility where the plaintiffs made a factual showing); *see also Shabazz v. Asurion Ins. Serv.*, No. 3:07-0653, 2008 WL 1730318, at *5 (M.D.Tenn. Apr. 10, 2008) (denying certification for Houston facility when evidence only demonstrated violations at Nashville locations); *Hens v. ClientLogic Operating Corp.*, No. 05-CV-381S, 2006 WL 2795620, at *5 (W.D.N.Y. Sept. 26, 2006) (limiting certified class to employees from eight of the defendant's fifty-two call centers, because the plaintiffs only presented evidence, in the form of declarations from employees working at these locations, that potential FLSA violations occurred). As in *Faust* and *Camper*, absent some evidentiary showing of FLSA violations at other Freddie Mac facilities, this court will not enlarge the opt-in class as Plaintiffs request.

Defendants present several counterarguments in an effort to avoid conditional certification entirely. First, they argue that Crosby's formal "policy has always been to pay its consultants for all hours worked and submitted." (ECF No. 76, at 4). "[I]t is well-settled," however, "that the promulgation of written policies, *per se*, is insufficient to immunize an employer from conduct that otherwise contravenes the FLSA." *Essame*, 2012 WL 762895, at *6); *see also Espenscheid v.*

10

*DirectSAT USA, LLC*, No. 09-cv-625-bbc, 2010 WL 2330309, at *7 (W.D.Wis. June 7, 2010) (finding that the defendants' formal wage and hour policies, which complied with the FLSA, did not preclude conditional certification where there was evidence of an informal policy to deny overtime (citing 29 C.F.R. § 785.13)).   By affirming in their declarations that Defendants refused to pay overtime hours and instructed Plaintiffs not to record all of their work on timesheets, Plaintiffs have adduced enough evidence to establish, preliminarily, that a common policy existed at the McLean facility.

Defendants also argue that Plaintiffs' situations are so factually distinct both from one another and from all other Crosby-employed underwriters at the Freddie Mac facility in McLean that they require individualized treatment.   (ECF Nos. 75, at 36-44; 76, at 12).   Specifically, they note that a class should not be conditionally certified because it would be unmanageable:  underwriters worked at different time periods, under varying policies, for different managers, and for different amounts of time.   (*Id.*).   Defendants cite *Syrja v. Westat, Inc.* to support these arguments.   756 F.Supp.2d 682. *Syrja* is inapposite to this case because the *Syrja* court denied conditional certification to a group of independent employees who worked in multiple geographic locations around the country, over different time periods, in offices run by different

11

managers, without any showing of a national policy. *Id.* at 688.
Here, conditional certification will be granted to a group of
employees who have worked in a single location, in identical
positions, under a single management structure. *See Robinson v.
Tyson Foods, Inc.*, 256 F.R.D. 97, 102 (S.D.Iowa 2008)
(conditionally certifying a class of meat processors who worked
in a single location under a single management structure).
Further, this argument "delves too deeply into the merits of the
dispute" at this initial notice stage. *Essame*, 2012 WL 762895,
at * 4 (refusing to conclude that numerous dissimilarities in
the plaintiffs' evidence counseled against granting conditional
certification); *see also, e.g.*, *Wlotkowski v. Mich. Bell Tel.
Co.*, 267 F.R.D. 213, 219 (E.D.Mich. 2010) ("Defendant's
arguments about the predominance of individualized inquiries and
dissimilarities between plaintiff and other employees are
properly raised after the parties have conducted discovery and
can present a more detailed factual record for the court to
review."); *De Lune-Guerrero v. N.C. Growers Ass'n, Inc.*, 338
F.Supp.2d 649, 654 (E.D.N.C. 2004) ("Differences as to time
actually worked, wages actually due and hours involved are . . .
not significant to [the conditional certification]
determination."). Defendants' argument also fails to recognize
that "[i]ndividual circumstances are inevitably present in a
collective action." *Espenscheid*, 2010 WL 2330309, at *4. To

proceed as a collective action at this stage, Plaintiffs need only make "a modest factual showing" that they were victims of a common policy or practice that violated the FLSA. *Essame*, 2012 WL 762895, at *4. Based on their declarations asserting that they were instructed not to record all of their overtime work and that they did not regularly receive overtime compensation despite working more than forty hours per week, Plaintiffs have made that showing.

Defendants next argue that the court should deny Plaintiffs' request for conditional certification because Plaintiffs' declarations are not credible and because Defendants have submitted declarations and testimony of other potential class members to contradict Plaintiffs' assertions. (ECF No. 75, at 29). Defendants contend that "Plaintiffs have each given multiple versions of their experiences as a Crosby [underwriter] in sworn declarations, depositions under oath, verified interrogatory responses, and other statements or writings." (*Id.* at 11). It is not entirely clear that the purported incongruity actually exists between Plaintiffs' declaration and deposition testimony, because personal knowledge of facts may be inferred from Plaintiffs' statements of first-hand experience and their observations. *See Sjoblom v. Charter Commc'ns, LLC*, 571 F.Supp.2d 961, 968-69 (W.D.Wisc. 2008) (refusing to discard plaintiffs' evidence for lack of personal knowledge and

13

inconsistencies between declarations and deposition testimony
where declarants did not actually know whether coworkers were
actually paid for overtime work because this fact could be
inferred from declarants' observations and personal experience
of not being paid for overtime) (citing *Payne v. Pauley*, 337
F.3d 767, 772 (7th Cir. 1991) (concluding that personal knowledge
includes reasonable inferences grounded in observation or first-
hand experience)).   For example, Defendants posit that Ms.
Mitchel's declaration affirms personal knowledge that coworkers
were not paid for overtime work, yet Ms. Mitchel later admitted
that she did not know what hours other Crosby underwriters
worked.   (ECF No. 75, at 18).   Ms. Mitchel's deposition
testimony evinces that she did not know the specific number of
overtime hours worked by her colleagues, but that she had
numerous conversations with them to discuss that they were
regularly working overtime hours.   (ECF No. 75-3, at 41-42).
Therefore, for purposes of conditional certification,
Plaintiffs' assertions of personal knowledge seem to be grounded
in reasonable inferences based on their observations and
experience.   *Sjoblom*, 571 F.Supp.2d at 968-69; *Pauley*, 337 F.3d
at 772.

Even if purported discrepancies did cast some doubt on
Mitchel, Farris, Wheeler, and Wilson's credibility, conditional
certification would not be denied on that basis alone because

"credibility determinations are usually inappropriate for the question of conditional certification." *Essame*, 2012 WL 762895, at \*3 (citing *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F.Supp.2d 200, 205 (N.D.N.Y. 2009)). Defendants' reliance on purported discrepancies between Plaintiffs' declarations and deposition testimony is, therefore, unavailing.

Defendants' presentation of other Crosby underwriters working for Freddie Mac who "were not aware of any policy or practice at Freddie Mac or Crosby Corporation where they were encouraged or required to work overtime hours without accurately recording the hours or receiving payment for them," is unpersuasive at this stage. (ECF No. 76 at 12). Indeed, "[t]he fact that [Plaintiffs'] allegations are disputed by . . . [D]efendants does not mean that [P]laintiffs have failed to establish a colorable basis for their claim that a class of similarly situated plaintiffs exist[s]." *Quinteros*, 532 F.Supp.2d at 772; *Essame*, 2012 WL 762895, at \*3 (noting that "the court does not . . . resolve factual disputes" at the conditional certification stage (quoting *Colozzi*, 595 F.Supp.2d at 205)); *Lewis v. Wells Fargo & Co.*, 669 F.Supp.2d 1124, 1128 (N.D.Cal. 2009) (conditionally certifying a collective action even though the defendant had submitted fifty-four declarations – many from current employees – that contradicted the plaintiffs' evidence).

Defendants argue that if a class is conditionally granted, that class should be limited only to those underwriters who worked for Crosby at Freddie Mac's McLean facility contemporaneous to the named Plaintiffs. Making this determination inquires too deeply into the merits of the case and is best addressed after the facts have been more fully developed with the benefit of full discovery. Defendants point out that since the Plaintiffs have left its employ, Crosby has issued a new formal policy regarding overtime pay. Plaintiffs argue, however, that Crosby's policy of underpaying underwriters was informal, and a change in formal policy may have no bearing on its actual practices. Plaintiffs require discovery to determine whether and when Defendants' policies and practices changed. Therefore, the class will not be as limited at this stage as the Defendants suggest.

Despite Defendants' assertions to the contrary, the evidence presented by Plaintiffs is sufficient to make the "minimal evidentiary showing" that a common policy or scheme to violate the FLSA existed for Crosby-employed underwriters working at Freddie Mac's McLean, Virginia facility.[4] *Rawls*, 244

---

[4] Defendants also argue that Crosby has already paid Plaintiffs and other underwriters for any potential overtime that they may have worked for Freddie Mac. (ECF Nos. 75, at 41-42). Because this argument cuts directly to the heart of the

F.R.D. at 300.   This conclusion is in line with numerous cases in this district and throughout the country that have conditionally certified collective actions based on analogous circumstances.   *See, e.g.*, *Essame*, 2012 WL 762895, at *3-4 (granting conditional certification where the plaintiffs submitted declarations that the defendant required them to work through their unpaid meal breaks); *Faust*, 2011 WL 5244421, at *5 (finding that the plaintiffs had made the "modest factual showing" necessary regarding an unlawful compensation policy by submitting evidence that they were "encouraged to work off the clock, [were] in fact working of the clock with their supervisor's knowledge, and [were] not being properly compensated for that time"); *Espenscheid*, 2010 WL 2330309, at *7-8 (conditionally certifying a nationwide class of technicians where the plaintiffs submitted affidavits from several putative class members that the defendants did not compensate them for overtime involving pre- and post-shift work and affidavits from company managers acknowledging this practice); *Kautsch v. Premier Commc'ns*, 504 F.Supp.2d 685, 689 (W.D.Mo. 2007) (concluding that the plaintiffs had made "a modest factual showing" that they were "similarly situated" by submitting affidavits and deposition testimony indicating that their

_____

merits of the case, the court will not consider it at this stage.

managers directed them not to record overtime and prohibited them from recording time spent on several non-production tasks). Conditional certification pursuant to § 216(b) is, therefore, warranted for the class of Crosbyy underwriters who were employed as temporary staff for Freddie Mac at its McLean, Virginia facility since May 1, 2009 and worked more than forty hours a week without receiving proper compensation, including overtime pay.

### B.   Court Supervised Notice to Potential Opt-In Plaintiffs is Proper

Because Plaintiffs have made a preliminary showing that Crosby-employed underwriters working at Freddie Mac's McLean facility are "similarly situated," notice of this action will be provided to underwriters who currently work, or have worked since May 1, 2009, at that facility.  Plaintiffs have submitted a proposed notice form.  (ECF No. 50-8).  Defendants requested an opportunity to suggest comments to the proposed notice form. (ECF No. 76, at 14 n.2).

The district court has broad discretion regarding the "details" of the notice sent to potential opt-in plaintiffs. *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202 (S.D.N.Y. 2006) (citing *Hoffmann-La Roche*, 493 U.S. at 171).  "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide 'accurate and timely notice

18

concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'" *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F.Supp.2d 445, 450 (S.D.N.Y. 2011) (quoting *Fasanelli v. Heartland Brewery, Inc.*, 516 F.Supp.2d 317, 323 (S.D.N.Y. 2007)). Notice to the proposed class will be approved without receiving additional comments from Defendants. They could have included any comments in their opposition. Presumably, Defendants request the ability to suggest comments to Plaintiffs' notice because it fails to assert Defendants' position in the lawsuit and to advise potential plaintiffs adequately about the right to join this suit with their own attorney and the possibility of having to participate in the discovery process and the trial. These considerations are important. *See, e.g.*, *Wass v. NPC Int'l, Inc.*, No. 09-2254-JWL, 2011 WL 1118774, at *10 (D.Kan. Mar. 28, 2011) (requiring the plaintiffs to amend a notice to include a statement about the defendant's position); *Whitehorn*, 767 F.Supp.2d at 450-51 (requiring amendment of proposed notice to inform potential opt-in plaintiffs "of the possibility that they will be required to participate in discovery and testify at trial" and "to state that participating plaintiffs may retain their own counsel").[5]

---

[5] Plaintiffs have also requested that the court appoint

Accordingly, the court will modify the proposed notice to potential class members to correct these deficiencies.[6]

The parties do not comment on the length of the notice period, and leave this to the court's discretion. Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions. *See, e.g., Wass*, 2011 WL 1118774, at *11 (denying the defendant's request to shorten the opt-in period to fewer than ninety days); *Calderon v. Geico Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *2, 8-9 (D.Md. Jan. 12, 2011) (authorizing a ninety-day notice period); *Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 68-69 (E.D.Pa. 2009) (finding a ninety-day opt-in period to be reasonable). Plaintiffs may, therefore, notify other potential plaintiffs of this action by first-class mail using the court-approved notice appended to this memorandum opinion.[7]

---

their counsel as counsel for this collective action. Defendants have not opposed this request. Thus, any potential opt-in plaintiff who does not enter an appearance through his own counsel, or indicate a desire to represent himself, will be represented by Plaintiffs' counsel.

[6] The notice will also clarify the scope of the collective action to make clear that it covers only underwriters who worked for Crosby at Freddie Mac's McLean, Virginia facility since May 1, 2009.

[7] To effectuate this notice, Defendants will be required to produce a file containing the full names and last known home

## III. Conclusion

For the foregoing reasons, Plaintiffs' motion for conditional certification and for court-facilitated notice will be granted in part and denied in part.  A separate Order will follow.


_____/s/
DEBORAH K. CHASANOW
United States District Judge

---

addresses of potential opt-in plaintiffs within fourteen days of the issuance of the accompanying Order.  Defendants will not, however, be required to provide phone numbers for potential opt-in plaintiffs at this time because Plaintiffs have made no showing of any "special need" for the disclosure of this information.  *See Calderon*, 2011 WL 98197, at *9 ("[A]bsent a showing by plaintiffs of 'special need for disclosure of class members' telephone numbers,' ordering such disclosure is not appropriate." (quoting *Arevalo v. D.J.'s Underground*, No. DKC 09-3199, 2010 WL 4026112, at *2 (D.Md. Oct. 13, 2010))).